# EXHIBIT C

**§ 23:16. Actual confusion as evidence of a likelihood of confusion - Questions and enquiries**

**Research References**

**West's Key Number Digest**

West's Key Number Digest, Trademarks ⚿1086

West's Key Number Digest, Trademarks ⚿1629(2)

Sometimes evidence of actual confusion is offered in the form of testimony about customers' enquiries to plaintiff as to whether plaintiff and defendant are affiliated or connected. Some courts have found evidence of such enquiries as evidence of actual confusion, [1] but other courts have said that a question as to possible affiliation reveals that the questioner had the difference in mind or else would not have bothered even to enquire. [2] As the Eighth Circuit observed, a question to an employee asking with which of two businesses with similar names he was employed "indicates a distinction in the mind of the questioner, rather than confusion." [3] The Second Circuit agreed, observing that:

> Inquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion. Indeed, such inquiries are arguably premised upon a *lack* of confusion between the products such as to inspire the inquiry itself. [4]

The better view is that while enquiry evidence is admissible and relevant, standing alone with no other evidence it is insufficient proof of actual confusion. [5] Such enquiries alone reveal a less than totally "confused" state of mind of the enquiring persons. [6]

FOOTNOTE 1. Prudential Ins. Co. v. Prudential Title Co., 189 U.S.P.Q. 617, 1976 WL 21080 (S.D. Tex. 1976); Kroger Co. v. Superx, Inc., 193 U.S.P.Q. 245, 1976 WL 21054 (E.D. Pa. 1976); Steinway & Sons v. Demars & Friends, 210 U.S.P.Q. 954, 1981 WL 40530 (C.D. Cal. 1981); Susan's, Inc. v. Thomas, 26 U.S.P.Q.2d 1804, 1993 WL 93333 (D. Kan. 1993) ("It is logical to conclude that these enquiries are evidence of some confusion regarding plaintiff's possible affiliation with defendant's business.").

FOOTNOTE 2. Fisher Stoves, Inc. v. All Nighter Stove Works, Inc., 626 F.2d 193, 206 U.S.P.Q. 961 (1st Cir. 1980) (questions as to differences between the products and asking if the two companies were affiliated); Programmed Tax Systems, Inc. v. Raytheon Co., 439 F. Supp. 1128, 197 U.S.P.Q. 509 (S.D.N.Y. 1977); Gruner + Jahr USA Publishing v. Meredith Corp., 991 F.2d 1072, 26 U.S.P.Q.2d 1583, 1588 (2d Cir. 1993) ("It was proper for the trial court to consider this testimony not as evidence of actual confusion, but rather as showing only queries into the possible relationship between the parties' publications." No infringement was found.); International Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 41 U.S.P.Q.2d 1251 (1st Cir. 1996) ("A lone inquiry does not indicate probable confusion of an appreciable number of purchasers.").

FOOTNOTE 3. Duluth News-Tribune v. Mesabi Publ. Co., 84 F.3d 1093, 38 U.S.P.Q.2d 1937 (8th Cir. 1996) (A reporter for the plaintiff, who identified himself as working for the "News-Tribune," was asked "which News-Tribune?" The court said: "The nature of the question demonstrates an understanding that at least two newspapers contain the words 'news' and 'tribune.'" No likelihood of confusion was found between plaintiff's DULUTH NEWS-TRIBUNE and defendant's SATURDAY DAILY NEWS & TRIBUNE.). *Accord* Frosty Treats Inc. v. Sony Computer Entertainment America Inc., 426 F.3d 1001, 75 U.S.P.Q.2d 1570 (8th Cir. 2005) (Evidence that over two years, five to 10 people had asked a manager of plaintiff whether plaintiff had sponsored the accused video game was only a "scintilla of evidence" which did not prevent dismissal on summary judgment.).

FOOTNOTE 4. Nora Beverages, Inc. v. Perrier Group of America, Inc., 269 F.3d 114, 60 U.S.P.Q.2d 1038 (2d Cir. 2001) (no likelihood of confusion was found). *Compare*: Virgin Enterprises Ltd. v. Nawab, 335 F.3d 141, 151, 67 U.S.P.Q.2d 1420 (2d Cir. 2003) (Plaintiff senior user submitted testimony of former employee of defendant VIRGIN WIRELESS, who said people would ask if defendant's outlet was affiliated with plaintiff

© 2012 Thomson Reuters. No claim to original U.S. Govt. works.

VIRGIN. "The district court correctly concluded that this evidence weighed in plaintiff's favor."); Gross v. Bare Escentuals Beauty, Inc., 641 F. Supp. 2d 175, 187, 90 U.S.P.Q.2d 1448 (S.D. N.Y. 2008) ("These two cases [*Nora* and *Virgin*] are in direct conflict with one another regarding the relevance of affiliation inquiries. Although the court is of the view that inquiries about affiliation suggest that there is confusion, there is no need to decide which precedent to follow."); Miss Universe, L.P., LLLP v. Villegas, 672 F. Supp. 2d 575, 93 U.S.P.Q.2d 1652 (S.D. N.Y. 2009) (Enquiries about affiliation are not evidence of confusion, citing the *Nora* precedent.).

FOOTNOTE 5. *Accord* Restatement Third, Unfair Competition §23, comment c (1995) ("Evidence of inquiries by customers as to whether the plaintiff and the defendant are associated, however, may not establish the existence of actual confusion if the nature of the inquiries indicates that consumers perceive a difference between the designations and are skeptical of the existence of a connection between the users.").

FOOTNOTE 6. *See* Pignons S. A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 212 U.S.P.Q. 246 (1st Cir. 1981) (enquiry as to affiliation may indicate confusion but only one such incident is "clearly insufficient"); Electronic Water Conditioners, Inc. v. Turbomag Corp., 221 U.S.P.Q. 162, 1984 WL 63085 (T.T.A.B. 1984) ("That questions have been raised as to the relationship between firms is not evidence of actual confusion of their trademarks"); Freedom Sav. & Loan Ass'n v. Way, 757 F.2d 1176, 226 U.S.P.Q. 123 (11th Cir. 1985), cert. denied, 474 U.S. 845, 88 L. Ed. 2d 110, 106 S. Ct. 134 (1985) (while actual confusion by a few is the evidence of a likelihood of confusion by many, trial court properly discounted testimony of president of plaintiff that some of his friends had enquired if defendant was connected to plaintiff); Jordache Enters. v. Hogg Wyld, Ltd., 828 F.2d 1482, 4 U.S.P.Q.2d 1216 (10th Cir. 1987) (quoting treatise with approval, Tenth Circuit held that while evidence of enquiries is admissible over a hearsay objection, it is entitled to "little weight" and is "of comparatively little value"); Pump, Inc. v. Collins Management, Inc., 746 F. Supp. 1159, 15 U.S.P.Q.2d 1716 (D. Mass. 1990) (court cited treatise with approval and found that evidence of enquiries, while relevant, is in itself insufficient to prove actual confusion); Cohn v. Petsmart, Inc., 281 F.3d 837, 61 U.S.P.Q.2d 1688, 58 Fed. R. Evid. Serv. 1085, 114 A.L.R.5th 719 (9th Cir. 2002) (citing treatise and concluding that several dozen enquiries to plaintiff asking if it was related to the defendant did not prevent a summary dismissal. "[T]hose enquiries are too ambiguous to demonstrate actual confusion."); Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 61 U.S.P.Q.2d 1705 (9th Cir. 2002) ("[T]hese questions may simply suggest discernment. . . . Whether the questions represented actual confusion or discernment is an issue better left to the trier of fact to resolve.").

© 2012 Thomson Reuters. No claim to original U.S. Govt. works.

**§ 25:54. Infringement of federally registered marks: "use in commerce" - Federal power over trademarks is founded on its power to regulate interstate commerce**

**Research References**

**West's Key Number Digest**

West's Key Number Digest, Trade Regulation ⚷ 870(1)

The power of Congress to protect and regulate trademarks stems from the Commerce Clause of the Constitution, under which Congress has the power to "regulate Commerce . . . among the several States." [1] This is the reason that "use in commerce" is required by the statute before there can be infringement of a federally registered trademark. The Lanham Act specifically defines "commerce" as the maximum that Congress can regulate under the Constitution.

A primary policy of Congress in passing the Lanham Act was to "regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce." [2] Congress sought to give trademarks nationally "the greatest protection that can be given them." [3] The commerce coverage of the Lanham Act has been characterized by the Supreme Court as a "sweeping reach." [4]

FOOTNOTE 1. U.S. Const. art. I, §8, cl. 3; Trade-Mark Cases, 100 U.S. 82, 25 L. Ed. 550 (1879). See §5:3.

FOOTNOTE 2. Lanham Act §45 ("Intent of Act"), 15 U.S.C.A. §1127.

FOOTNOTE 3. S. Rep. No. 1333, 79th Cong. 2d Sess. (1946), reprinted in 1946 U.S.C.C.A.N. 1277.

FOOTNOTE 4. Steele v. Bulova Watch Co., 344 U.S. 280, 97 L. Ed. 319, 73 S. Ct. 252, 95 U.S.P.Q. 391 (1952).

© 2012 Thomson Reuters. No claim to original U.S. Govt. works.