IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| Pure Fishing, Inc., | ) | C/A No.: 3:10-cv-3117-JFA |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | |
| Redwing Tackle, Ltd., | ) | **ORDER** |
| Defendant. | ) | |

This matter comes before the court pursuant to plaintiff Pure Fishing, Inc.'s motions for summary judgment (ECF Nos. 64 & 65). The court held a hearing on August 9, 2012, and after considering the written materials submitted and the arguments of counsel, the court grants Pure Fishing's motions for summary judgment.

**I.      Factual and Procedural History**

Pure Fishing, Inc., (Pure Fishing) filed the present action alleging trademark infringement and unfair competition against Redwing Tackle, Limited (Redwing). Pure Fishing alleges that it owns various trademarks as a part of the SPIDER family of marks for fishing products: SPIDER, SPIDERWIRE, SPIDERLINE, SPIDERWEB, SPIDERWIRE EZ MONO, SPIDERWIRE STEALTH, and the spider design mark. Pure Fishing obtained the marks through assignment from its predecessors. Pure Fishing and its predecessors have sold the SPIDER branded fishing products since 1993. Pure Fishing uses the SPIDERWIRE mark in connection with its fishing line products, while the various SPIDER marks are used for other fishing equipment, including fishing rods

and reels. The SPIDERWIRE mark was registered on February 4, 1997. Pure Fishing's infringement claim is limited to the SPIDERWIRE mark. The SPIDER mark—subject of Redwing's counterclaim—was registered in 2004.

Redwing began using the SPIDER THREAD mark on its spawn tying thread[1] in 1983. In 2009, Redwing filed an application to use SPIDER THREAD on elastic thread and fishing line. The United States Patent and Trade Office (USPTO) rejected that application in April 2009. Redwing then filed a petition to cancel Pure Fishing's SPIDER mark before the Trademark Trial and Appeal Board. Redwing used the SPIDER THREAD mark in connection with the sale of its fishing line in September 2010. Defendant Redwing has filed a counterclaim to cancel Pure Fishing's SPIDER mark that parallels the claim before the Trademark Trial and Appeal Board, and that proceeding is now suspended pending the outcome of this litigation.

Pure Fishing filed the initial complaint in this trademark infringement case on December 7, 2010. Pure Fishing now moves for summary judgment as to the claims it asserts in the Second Amended Complaint (ECF No. 65) and for summary judgment as to Redwing's counterclaim (ECF No. 64).

## II. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when a moving party has shown that "there is no genuine

---

[1] Spawn tying thread is a tacky, vinyl thread that adheres to itself and is used for tying spawn sacks containing salmon or trout eggs.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). When evaluating a motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party," *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (internal quotations omitted), and summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of Maryland Community College*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## III. Discussion

### a. Pure Fishing's Claims in the Second Amended Complaint

Pure Fishing's Second Amended Complaint (ECF No. 47) asserts claims for trademark infringement and unfair trade practices under both federal law and state law.[2] To prove trademark infringement and unfair competition, a plaintiff must show (1) that it owns a valid and protectable mark and (2) that defendant's use of a similar mark creates a

---

[2] The law governing the claims is the same under federal and state law.

likelihood of confusion. *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009); *Petro Stopping Centers, L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 91 (4th Cir. 1997). "[S]ummary judgment is appropriate when the material, undisputed facts disclose a likelihood of confusion." *Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp.*, 148 F.3d 417, 422 (4th Cir. 1998). Plaintiff also asserts a claim for unjust enrichment. *See Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868, 872 (S.C. 2000) (requiring proof of a "(1) benefit conferred by plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value").

The first element of a trademark infringement claim requires Pure Fishing to own a valid and protected mark. Pure Fishing provides a detailed recitation of the registration and history of its various marks which constitutes prima facie evidence of their validity. (Defendant specifically contests the SPIDER mark, which is the subject of the counterclaim discussed below). In 2001, Fishing Spirit (a predecessor to Pure Fishing) filed a Section 8 and Section 15 declaration stating that the SPIDERWIRE mark had been in use for five consecutive years in connection with fishing line, that the mark was still in use, and that there had been no final decision adverse to its claim of ownership. *See* 15 U.S.C. § 1058(a)(1). That filing rendered the mark incontestable. *See* 15 U.S.C. § 1065. In 2006, Pure Fishing's predecessor renewed the SPIDERWIRE registration by filing a Combined Declaration of Use in Commerce and Application for Renewal of Registration

4

under Sections 8 and 9 of the Lanham Act. *See* 15 U.S.C. §§ 1058(a)(3) & 1059. Thus, Pure Fishing has demonstrated as a matter of law that it contains a valid and protected mark.

The second element is whether there is a likelihood of confusion "in the minds of consumers about the origins of the goods or services in question." *George*, 575 F.3d at 393. In the Fourth Circuit, courts look at nine non-exclusive factors under this analysis:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*Id.* (citations omitted). The factors are not of equal importance and a given factor may not "always [be] relevant in any given case." *Id.* (citations omitted). The parties agree on five grounds: that the goods are similar, that the goods are distributed similarly, that they are marketed to similar consumers, that the quality of the goods is not an issue, and that the sophistication of the parties does not overcome the likelihood of confusion. The parties disagree on the remaining grounds.

The strength of the mark is the "first and paramount factor." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). In assessing the strength of a mark, courts examine both the conceptual strength—"the placement of the mark along a spectrum focusing on the inherent potential distinctiveness of the term"—and commercial strength—the marketplace's recognition—of a mark. *See Renaissance Greeting Cards,*

*Inc. v. Dollar Tree Stores, Inc.*, 405 F. Supp. 2d 680, 690 (E.D. Va. 2005). "A mark's conceptual strength is determined in part by its placement into one of four categories of distinctiveness: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful." *George & Co.*, 575 F.3d at 394–95. "Arbitrary marks, which are also inherently distinctive, typically involve common words that have no connection with the actual product." *Id.* at 395. Courts determine commercial strength by examining factors such as advertising expenditures, consumer studies linking the mark to a source, sales success, unsolicited media coverage, any attempts to plagiarize the mark, and the length and exclusivity of the mark's use. *Id.*

Pure Fishing asserts that its SPIDERWIRE mark possess both conceptual and commercial strength. Pure Fishing argues that its mark has conceptual strength because a spider and wire are not otherwise related to fishing, thus it should be considered an arbitrary mark. The two aspects of the mark, spider and wire, form what Pure Fishing calls an incongruous phrase. Moreover, no company besides the two in this case uses a spider in relation to fishing products.

Pure Fishing next argues that the mark has considerable commercial strength. Pure Fishing indicates that its entire brand of SPIDER marks has earned substantial revenues (ten to eleven million dollars each year from 2005 until 2011), that Pure Fishing expends approximately six and half million dollars each year marketing the SPIDER brand products, and that their advertisements appear in national and regional magazines as well as television shows. Pure Fishing also demonstrates that its products are or have

6

been available through such well known retailers as Wal-Mart, K-Mart, Cabela's, Bass Pro Shops, and Dick's Sporting Goods. Redwing contends that Pure Fishing has not proved the strength of its mark because it has only offered evidence of the revenue generated by the SPIDER marks generally, and not SPIDERWIRE specifically.

Any evidence of actual confusion, the next factor, "is entitled to substantial weight." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 937 (4th Cir. 1995) (citations omitted). Pure Fishing notes that Barry Westall, Redwing's President and owner, indicated that there have been instances of actual confusion by customers at trade shows in Canada. Redwing argues that these are isolated incidents occurring outside of this court's jurisdiction.

The next factor is the similarity of the marks to the consumers. "[I]n evaluating the similarity of two marks, . . . the marks need only be sufficiently similar in appearance, with greater weight given to the dominant or salient portions of the marks." *Lone Star*, 43 F.3d at 396. Pure Fishing includes a consumer survey to demonstrate that some consumers would find the two marks similar. The survey indicates that approximately three out of ten individuals surveyed would find the two marks similar. Redwing lodges a number of complaints about the survey, many regarding whether or not it demonstrates actual confusion, but Redwing does not offer a competing survey. Additionally, "a judge is free to draw upon his own experience and observation to make an informed judgment as to the likelihood of confusion apt to be spawned by strongly analogous symbols." *Volkswagenwerk AG v. Hoffman*, 489 F. Supp. 678, 682 (D.S.C. 1980) (citing *Baker v.*

7

*Simmons Co.*, 307 F.2d 458, 464 (1st Cir. 1962)). Both parties address this argument and ask this court to review the marks in question, and they have provided examples in both the briefs and at oral argument.

Pure Fishing next argues that Redwing intended to trade on Pure Fishing's goodwill in the SPIDERWIRE mark. Pure Fishing contends that because Redwing's application was rejected, and they subsequently marketed SPIDER THREAD, Redwing knew of Pure Fishing's product and, therefore, intended to trade on its goodwill. Pure Fishing admits that Redwing has not expressly stated its intent to trade on Pure Fishing's goodwill. Redwing responds that it hoped to capitalize on the goodwill of its own product, the spawn tying thread, as opposed to Pure Fishing's products. Similarly, Pure Fishing contends that Redwing's actions allow recovery for unjust enrichment. Pure Fishing contends that the substantial goodwill and name-recognition it established in the fishing line market conferred a benefit on Redwing when it chose to enter that same market.

The parties also addressed the applicability of affirmative defenses, including a prior use defense.[3] "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Intern., Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). Pure

---

[3] Redwing informs the court that the "zone of expansion" argument addressed in Plaintiff's argument is irrelevant, and does not argue its applicability.

Fishing argues that a prior use defense is not applicable because Redwing was using the marks related to spawn tying thread, a different product than fishing line. Pure Fishing contends that when it began using the SPIDER marks on fishing line in 1993, Redwing was not a participant in—nor did it have plans to enter—the fishing line market. Redwing contends that it was a prior user because spawn tying thread and fishing line are similar products. Redwing argues by analogy that because use of a mark on fishing hooks and fishing lines has been held to be likely to cause confusion, spawn tying thread and fishing line should be considered similar products. *In re Berkeley & Company, Inc.*, 180 U.S.P.Q. 147, 147 (T.T.A.B. 1973).

Viewing the evidence in the light most favorable to Redwing, the evidence shows that Pure Fishing has demonstrated its trademark claims as a matter of law and is entitled to summary judgment on the claims asserted in the Second Amended Complaint. Initially, Pure Fishing has provided ample evidence to demonstrate that it possesses a valid mark in SPIDERWIRE acquired through its predecessors. On the second element, the evidence shows a likelihood of confusion.

First, Pure Fishing has demonstrated that it possess a strong mark. The conceptual strength of the mark is shown by the fact that two incongruous aspects have been joined and are recognized within the market. As a result, the SPIDERWIRE mark is properly considered an arbitrary mark that has attained conceptual strength. In light of the evidence of SPIDERWIRE's commercial strength, Pure Fishing has demonstrated that prospective customers would understand a reference to a spider in conjunction with

fishing line "to refer to a particular . . . business enterprise," namely Pure Fishing. *See CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 269 (4th Cir. 2006). Moreover, Pure Fishing has demonstrated that it has enjoyed success with its use of SPIDER marks as evidenced by their wide distribution and availability. The court is aware that while all of the success is not directly attributable to the individual SPIDERWIRE mark, the evidence demonstrates that mark possess considerable commercial strength on its own.

Next, the evidence shows instances of actual confusion. Though the events in question occurred in Canada, they are nonetheless relevant because there is no evidence that Canadian consumers behave any differently than American consumers. The evidence is particularly relevant because the two products have only recently coexisted, and Redwing has not marketed SPIDER THREAD fishing line extensively in the United States. Rather, in the area where it has been marketed, Canada, confusion has occurred.

The court has also conducted its own review of the marks in question. The marks are quite similar in that both employ a spider in relation to fishing line: both use a spider image, a spider web image, a bolded typeface SPIDER word, and in some instances, similar coloring. Pure Fishing's survey is also relevant to this inquiry. While Redwing lodges some technical complaints, many concern whether or not the survey indicates actual confusion, which is not the purpose for which Pure Fishing has offered the survey.[4]

---

[4] "[A] properly conducted survey of the relevant class of prospective consumers of the goods or services at issue can be of use in deciding the likelihood of confusion." *IDV North America, Inc. v. S & M Brands, Inc.*, 26 F.Supp.2d 815, 829 (E.D. Va.1998).

Finally, Redwing has failed to offer a survey in rebuttal or any evidence to indicate that the marks are not similar.

On the other hand, Pure Fishing has failed to provide evidence sufficient to establish as a matter of law that Redwing intended to trade on Pure Fishing's goodwill. However, even "if there is good faith belief that a subsequently-adopted mark will not lead to confusion . . . that intent is no defense if a court finds actual or likelihood of confusion." *Pizzeria Uno*, 747 F.3d at 1535. Because the factors are non-exclusive, courts have granted summary judgment to a plaintiff in similar cases without the plaintiff demonstrating that the defendant intended to capitalize on its goodwill. *See Resorts of Pinehurst*, 148 F. 3d at 422.

The court also notes that the factors on which the parties agree weigh in favor of Pure Fishing. The parties offer similar goods, advertised in similar manners, and marketed to the same consumers. Customers in these markets range from professional anglers to novice weekend fishermen, such that the sophistication of the consumers does not overcome any likelihood of confusion. Accordingly, these factors would contribute to rather than detract from the likelihood of confusion.

Redwing has failed to establish the applicability of the prior use defense. The two products, spawn tying thread and fishing line, although both fishing products, are not the same product. While at least one court has determined that fishing line and hooks are related such that use of the same mark on both could cause confusion, it does not follow that the same can be said of spawn tying thread and fishing line. Spawn tying thread is a

tacky, vinyl thread that adheres to itself and is used for a particular niche of fishing—tying spawn sacks containing salmon or trout eggs. Fishing line does not share these properties and is used for all types of fishing.

Considering all of the factors and defenses, and viewing the evidence in the light most favorable to Redwing, the record shows that Pure Fishing is entitled to judgment as a matter of law on the claims it asserts. While Pure Fishing has offered evidence to support its claims, Redwing relies largely on argument and has failed to produce evidence sufficient to create an issue of fact for trial. The evidence also shows that Pure Fishing is entitled to judgment as a matter of law on the unjust enrichment claim. The use of SPIDER THREAD by Redwing capitalizes on the extensive goodwill Pure Fishing has established, and would confer a benefit on Redwing. Allowing Redwing to reap that benefit would be inequitable, and accordingly, Redwing should not be permitted to retain that benefit. However, because Pure Fishing has conceded the damages portion of their claim, the court need not address that aspect of the unjust enrichment claim.

### *b. Redwing's Counterclaim*

Redwing counterclaimed for cancellation of Pure Fishing's SPIDER trademark registration. *See* 15 U.S.C. § 1119. Redwing claims that Pure Fishing abandoned the SPIDER mark, that Pure Fishing made a fraudulent statement in a Declaration of Use filed with the USPTO, and that Redwing is the senior user. Redwing contends that each of these grounds supports cancellation of the mark.

Redwing first argues that Pure Fishing has abandoned the mark. Redwing bears the burden on this counterclaim. *See Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 33 U.S.P.Q.2d 1961, 1973 (E.D.N.Y. 1961). Pure Fishing has introduced evidence to show its continued use of its SPIDER mark on fishing line, fishing rods and fishing reels. Redwing argues that the testimony is conflicting because Pure Fishing's 30(b)(6) deponent stated that its product line was limited to a product specification book, which did not include fishing rods and reels, while other deponents stated such products were available through alternate sources. Redwing also appears to question the reliability of the computer records indicating Pure Fishing's sales of rods and reels.

Redwing next argues that the SPIDER mark should be cancelled because it was obtained by fraud. "[A] trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO." *In re Bose*, 580 F.3d 1240, 1244 (Fed. Cir. 2009). Pure Fishing admits that in its Section 8 Declaration[5] it deleted certain goods for which it had not been using the SPIDER marks. Pure Fishing contends that it did not act fraudulently in filing the Declaration of Use, and its motion for summary judgment on the counterclaim includes affidavits from various officers within Pure Fishing along with records indicating the use of the SPIDER mark in connection with fishing line, rods and reels at the time the declaration was filed.

---

[5] A Section 8 Declaration, 15 U.S.C. § 1058(a)(1), must be filed between the fifth and sixth year of a trademark's registration to state whether the mark is still in use and must set forth the goods for which the mark remains in use as well as identify any goods for which the mark was originally registered but is no longer used.

Redwing contends that *In re Bose* leaves open the issue of whether fraud can be proven by showing a reckless disregard for the truth. Redwing also attempted to take the deposition of the attorney, Ms. VanDerZanden, and a paralegal responsible for filing the declaration at issue, but this court denied that request by granting a protective order. Defendant now asks the court to infer intent to deceive from Ms. VanDerZanden's actions because it alleges she did not consult with anyone at Pure Fishing to obtain the information regarding the filing.

Redwing next contends that the SPIDER mark was void ab initio because it was not in use in commerce at the time of the filing for all of the uses specified. Redwing relies on cases where courts have held that a trademark was void where the applicant was not using the trademark for any of the specified uses at the time of the filing. *See Aycock Engineering, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009) (holding that applicant's preparation to use the mark was insufficient to constitute use in commerce). Several courts, however, have held that so long as the mark is used on some of the listed goods as of the time of the filing, the application is not void in its entirety. *Grand Canyon West Ranch LLC v. Hualapai Tribe*, 78 U.S.P.Q.2d 1696, 1697 (T.T.A.B. 2006); *ShutEmDown Sports, Inc. v. Lacy*, 102 U.S.P.Q.2d 1036, 1045 (T.T.A.B. 2012).

Finally, Redwing contends that it is the senior user, because it was using the SPIDER THREAD mark on spawn typing thread. As noted above in the discussion of the prior use defense, this argument is inapplicable because spawn tying thread and fishing line are distinct products.

Viewing the facts in the light most favorable to Redwing, the evidence shows that Pure Fishing is entitled to judgment as a matter of law on Redwing's counterclaim. Redwing, who carries the burden on the abandonment claim, has failed to offer evidence indicating that Pure Fishing has in fact abandoned the SPIDER mark. On the other hand, Pure Fishing has offered evidence indicating that it was using the mark on fishing line, fishing rods and fishing reels. Pure Fishing also supplemented its 30(b)(6) deponent list to clarify that its first deponent did not possess knowledge about some aspects of Pure Fishing's business, namely the marketing of fishing rods and reels. Accordingly, there is no evidence before the court to demonstrate that Pure Fishing abandoned the mark.

Redwing's claim of fraud appears to be directed at the attorney who filed the declaration. Redwing, however, has not offered any evidence to demonstrate that the mark was not in use when the attorney filed the declaration, and therefore has failed to meet the high burden of *In re Bose*. Similarly, the lack of evidence to show that the mark was not in use undermines their claim the declaration was filed with a reckless disregard for the truth.

Redwing also fails to establish that the mark should be held void ab initio. This court will follow those courts that have held that so long as the mark is in use on some of the specified items contained in the declaration, it is not void in its entirety. Because Pure Fishing was using the SPIDER marks on fishing line, fishing rods, and fishing reels, the mark is not void ab initio. Accordingly, the evidence shows that Pure Fishing is entitled to summary judgment on Redwing's counterclaim.

**IV.  Conclusion**

For the reasons discussed above, the record before the court demonstrates that Pure Fishing is entitled to judgment as a matter of law on the claims it asserts in the Second Amended Complaint as well on the claims asserted against it in the counterclaim. At oral argument, Pure Fishing represented that it would concede on the damages portion of their claims, and seeks only a permanent injunction.  Accordingly, the court need not address the damages portion of the case.

Pure Fishing has demonstrated that a permanent injunction in this case is appropriate given that it would suffer irreparable harm if Redwing continues to use SPIDER THREAD on fishing line.  The court intends to grant a permanent injunction and enjoin Defendant Redwing from using the mark SPIDER THREAD on fishing line or in connection with the marketing, sale or distribution of fishing line.  The court desires input from the parties as to the precise language to be used in the injunction. Accordingly, the parties are directed to collaborate and submit input on the precise language of the injunction within seven (7) days from the date of this order.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

August 16, 2012  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge